UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY CLAPP, MARY JONES** and **DARYL MCCLEARY**, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil No. 2:17-cv-2097 ) ) |
| **ACCORDIA LIFE AND ANNUITY COMPANY, GLOBAL ATLANTIC FINANCIAL GROUP LIMITED,** and **ALLIANCE-ONE SERVICES, INC.**, | ) ) ) ) ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiffs Larry Clapp, Mary Jones, and Daryl McCleary ("Plaintiffs"), on behalf of themselves and all others similarly situated, by counsel, bring this Class Action Complaint against Defendants Accordia Life and Annuity Company ("Accordia"), Global Atlantic Financial Group Limited ("Global Atlantic"), and Alliance-One Services, Inc. ("Alliance-One"), and allege as follows:

### INTRODUCTION

1. This case involves insureds who had life insurance policies and annuities that were assumed by insurer Accordia and who were damaged when Accordia and/or Alliance-One stopped automatically withdrawing or accepting premium payments during a "coversion period," which caused the policies to lapse, to have their "no-lapse guarantee" removed, to be converted from one type of policy to another type of policy, or to otherwise lose crucial and highly-valuable features.

2. These negative changes to the policies as a result of Defendants' actions have caused significant harm to the insureds. For example, insureds who had a universal life insurance policy that included a no-lapse guarantee were guaranteed to have life insurance for their entire life. But, as a result of Defendants' actions causing the removal of the no-lapse guarantee, these insureds now are not guaranteed insurance for life and the policies are now set to lapse at a point late in life when the insureds can no longer obtain affordable life insurance. This means that in order to guarantee insurance for life, the insureds are now required to obtain a new universal no-lapse policy, at a higher price than they had originally paid because the insureds are now older than when they originally purchased the universal life no-lapse policy currently held by Accordia. In addition, insureds have been directly injured by Defendants' actions that have caused the cash values of policies to be reduced and policies to be converted from cash-value policies, such as whole life policies, to no or lower-cash value policies, such as term life insurance.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action involving more than 100 class members in which matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which at least one member of the class of plaintiffs is a citizen of a state different from a defendant.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## PARTIES

5.     Plaintiff Larry Clapp is, and at all relevant times was, a citizen of the State of Illinois, residing in Coles County, Illinois.

6.     Plaintiff Mary Jones is, and at all relevant times was, a citizen of the State of Indiana, residing in Clay County, Indiana.

7.     Plaintiff Daryl McCleary is, and at all relevant times was, a citizen of the State of Indiana, residing in Vigo County, Indiana.

8.     Defendant Accordia Life and Annuity Company is, and at all relevant times was, a citizen of the State of Iowa and of the State of Tennessee, as it is a corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Nashville, Tennessee.

9.     Defendant Global Atlantic Financial Group Limited is, and at all relevant times was, a citizen of the State of Delaware and of the State of New York, as it is a financial services holding company organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

10.    Defendant Alliance-One Services, Inc., is, and at all relevant times was, a citizen of the State of Delaware and of the State of Virginia, as it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Falls Church, Virginia.

## FACTUAL ALLEGATIONS

11. Global Atlantic is a financial services holding company that sells insurance and investment products through various subsidiaries, including Accordia.

12. Global Atlantic was formed in 2004 by The Goldman Sachs Group, Inc., and was spun off from Goldman Sachs in May 2013. In 2013, Athene Annuity and Life Company ("Athene") sold most of its life insurance business to Accordia. Athene continued to administer the business until late 2015 when Accordia assumed administration of the business.

13. Alliance-One is a third-party insurance administrator hired by Accordia to administer its life insurance and annuity contracts. Alliance-One was responsible for collecting premium and annuity payments by Electronic Funds Transfer ("EFT"). Accordia represented to Plaintiffs and members of the Class that the change in ownership from Athene to Accordia would not impact collection of EFT payments from insureds or billing or depositing of premium payments.

14. Defendants have engaged in a widespread and coordinated scheme to purposefully lapse or cause the cancellation or conversion of insurance policies owned by consumers. Defendants carried out this scheme or artifice by failing to automatically bill, collect, and apply payments from Plaintiffs and other insureds despite having an agreement between the parties requiring Defendants to automatically debit Plaintiffs' checking accounts for the monthly premium. This illegal practice was carried out throughout the states of Illinois and Indiana as part of a coordinated effort organized by Accordia and Global Atlantic and carried out by

Alliance-One. Upon information and belief, Alliance-One was the accounts receivable management company hired by Accordia and Global Atlantic to collect monthly premium payments from Plaintiffs. Accordia and Alliance-One repeatedly failed to timely and properly collect premium payments from Plaintiffs, which resulted in negative changes to their life insurance policies. Despite the negative changes, Defendants continued to promise insureds to "please be assured that coverage and any applicable guarantees remain in effect throughout this process."

15. The following examples show negative changes caused by Defendants' conduct on Plaintiffs' and Class members' policies.

**Destruction of No-Lapse Guarantee: Plaintiff Mary Jones**

16. Plaintiff Mary Jones purchased a $50,000 universal life insurance policy, Policy No. IL00155690, on June 10, 2004. The policy had a no-lapse guarantee rider, under which the policy was guaranteed never to lapse (i.e., to last for the life of the insured).

17. The policy premiums were to be automatically deducted by EFT from Ms. Jones's checking account monthly, which they were for approximately 10 years.

18. During the "conversion" of the policy to Accordia, Defendants ceased making automatic withdrawals of premium payments from Ms. Jones's account, beginning in approximately August of 2015.

19. As a result of Defendants' failures to collect premium payments automatically by EFT, Defendants removed the no-lapse guarantee from Ms. Jones's policy, which means the policy is no longer guaranteed to provide coverage for life.

20. The insured has been directly damaged, through no fault of her own, because now in order to have guaranteed insurance for life, she must qualify and pay for a new life insurance policy now, which will have a higher premium because the insured is now over 10 years older.

21. In addition, the cash value of the insurance has been reduced by its conversion, resulting in direct financial harm to the insured, and the policy has been converted into a Modified Endowment Contract, which has negative income tax consequences.

22. Such a removal of the no lapse guarantee rider has happened to numerous insureds through no fault of their own and as a direct result of Defendants' actions during the "conversion."

**Destruction of No-Lapse Guarantee: Plaintiff Larry Clapp**

23. Plaintiff Larry Clapp purchased a $100,000 life insurance policy for his daughter, Brittany Clapp, Policy No. IL01354590, purchased on March 26, 2009, on which he is the primary beneficiary. The policy had a no-lapse guarantee rider, under which the policy was guaranteed never to lapse (i.e., to last for the life of the insured).

24. The policy premiums were direct billed and paid for by Mr. Clapp for approximately 6 years.

25. During the "conversion" of the policy to Accordia, Defendants ceased billing or applying premium payments.

26. As a result of Defendants' failures to bill or collect premium payments, Defendants removed the no-lapse guarantee from the policy, which means the policy is no longer guaranteed to provide coverage for life.

27. Mr. Clapp has been directly damaged, through no fault of his own, because now in order to have guaranteed insurance for life for his daughter on which he is the beneficiary, he must have her qualify for and he must pay for a new life insurance policy now, which will have a higher premium because the insured is now over 7 years older.

28. In addition, the cash value of the insurance has been reduced by its conversion, resulting in direct financial harm, and the policy has been converted into a Modified Endowment Contract, which has negative income tax consequences.

29. Such a removal of the no lapse guarantee rider has happened to numerous insureds through no fault of their own and as a direct result of Defendants' actions during the "conversion."

**Conversion of Whole Life Insurance to Term Life Insurance: Plaintiff Daryl McCleary**

30. Plaintiff Daryl McCleary purchased a $40,000 whole life insurance policy, Policy No. 02190320, on August 20, 1995. The policy had a guaranteed premium amount that, if paid through age 65, provided life insurance for the policyholder's entire life.

31. The policy premiums were to be automatically deducted by EFT from Mr. McCleary's checking account monthly, which they were for approximately 20 years.

32. During the "conversion" of the policy to Accordia, Defendants ceased making automatic withdrawals of premium payments from Mr. McCleary's account, beginning in approximately August of 2015.

33. As a result of Defendants' failures to collect premium payments automatically by EFT or to apply premium payments made by Mr. McCleary by check, Defendants invoked a "non-forfeiture" provision of the policy, under which if an insured missed a premium payment the policy was converted to "extended term insurance," and Defendants converted Mr. McCleary's policy from a whole life policy to "extended term insurance" due to expire on December 7, 2030.

34. As a result of the conversion of the policy, instead of premiums being guaranteed until age 65 and coverage being provided for the insured's entire lifetime, the insured's policy will expire on December 7, 2030.

35. The insured has been directly damaged, through no fault of his own, because now in order to have guaranteed whole life insurance, he must qualify and pay for a new whole life insurance policy now, which will have a higher premium because the insured is now over 20 years older. In addition, the cash value of the insurance has been reduced by its conversion, resulting in direct financial harm to the insured.

36. Such a conversion from whole life insurance to extended term insurance has happened to numerous insureds through no fault of their own and as a direct result of Defendants' actions during the "conversion."

## CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this action on their own behalves and as a class action on behalf of the following class:

> All persons in the States of Illinois and Indiana who purchased or owned a life insurance policy or annuity insured or managed by Accordia Life and whose premium or annuity payment was not billed, collected, or applied by Defendants during the "conversion" of the policy or annuity to Accordia Life.

38. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(a) and (b)(3).

39. The class consists of thousands of persons, such that joinder of all Class members is impracticable.

40. There are questions of fact and law that are common to the Class members and that predominate over any questions affecting only individual members. These questions include, but are not limited to:

   a. Whether Defendants business practices were unlawful, unfair, or deceptive;

   b. Whether Defendants' engaged in a widespread and systematic practice that led to conversion of Plaintiff and Class Members' policies into lower value policies with negative features;

   c. Whether Defendants breached their contracts with Plaintiffs and Class Members when they failed to bill, collect, or apply premium payments; and

   d. Whether Defendants breached their duties of good faith and fair dealing to Plaintiffs and Class Members.

41. The claims of the Plaintiffs are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiffs have no interests that are antagonistic to the interests of the Class members.

42. The Plaintiffs are adequate representatives of the Class and have retained competent legal counsel experienced in class actions and complex litigation.

43. A class action is an appropriate and superior method for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members and would cause a strain on judicial resources and increase the likelihood of varying outcomes, yet each Class member would be required to prove an identical set of facts in order to recover damages.

44. This action does not present any unique management difficulties.

### COUNT I – UNFAIR AND DECEPTIVE TRADE PRACTICES / CONSUMER FRAUD

45. Plaintiffs incorporate paragraphs 1–44 of this Complaint as if fully set forth below.

46. Through their conduct and omissions, Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*.

47. Section 2 of the ICFA, 815 ILCS 505/2, provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with

intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

48. Section 10a of the ICFA, 815 ILCS 505/10A, provides in relevant part:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . .
\* \* \*
(c) Except as provided in subsections (f), (g), and (h) of this Section, in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

49. Plaintiff Larry Clapp and other Illinois Class members are "consumers" or "persons," as defined under the ICFA, 815 ILCS 505/1 *et seq*.

50. Defendants' conduct alleged in this complaint occurred in the course of trade and commerce.

51. At all relevant times, Defendants were engaged in administering and overseeing the life insurance policies involved, in the ordinary course of business. Defendants administered the policies and payments on the policies, knowing that consumers would rely on proper billing, collection, and application of premium payments to their policies.

52. Defendants promised that "please be assured that coverage and any applicable guarantees remain in effect throughout this process," but Defendants failed to properly bill, charge, and collect premium payments, causing coverages and guarantees to lapse.

53. Defendants omitted the material fact that their failure to bill, charge, and collect premiums would negatively affect insureds' policies.

54. The omission of this material fact was likely to mislead consumers and, in fact, did mislead them.

55. Defendants made these omissions with the intent that Class members would rely on the information provided, and omitted the material fact that Defendants failed to properly bill, charge, and collect premium payments, causing coverages and guarantees to lapse.

56. Had Defendants not engaged in the deceptive omission of the material fact described above, the members of the Class would have been presented with an informed choice.

57. As a direct and proximate result of Defendants' conduct, Class members have suffered actual damages.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A)  Actual and punitive damages and interest;

(B)  Restitution, disgorgement, and other equitable monetary relief;

(C)  Attorneys' fees, litigation expenses, and costs; and

(D) Any other relief this Court deems equitable and just.

## COUNT II – BREACH OF CONTRACT

58. Plaintiffs incorporate paragraphs 1–57 of this Complaint as if fully set forth below.

59. Plaintiffs and the Class had an agreement with Defendants, or were third party beneficiaries of agreements with Defendants, that Defendants would charge, collect, and apply premium payments towards Plaintiffs' and Class members' life insurance policies.

60. Notwithstanding Plaintiffs' and Class members' full compliance, Defendants breached the agreement by failing to charge, collect, and apply premium payments towards Plaintiffs' and Class members' life insurance policies during the "coversion period" from Athene to Accordia.

61. As a direct and proximate result of Defendants' breach of contract, Plaintiffs and Class members have been damaged, including through negative changes to their insurance policies and guarantees and reduction in policy values.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A) Actual and compensatory damages and interest;

(B) Restitution, disgorgement, and other equitable monetary relief;

(C) Attorneys' fees, litigation expenses, and costs; and

(D) Any other relief this Court deems equitable and just.

## COUNT III – BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

62.  Plaintiffs incorporate paragraphs 1–61 of this Complaint as if fully set forth below.

63.  Plaintiff and Class members had insurance contracts with Accordia under which Accordia was the insurer and Plaintiffs and Class members were insureds.

64.  The law recognizes an implied duty of good faith in all insurance contracts requiring that an insurer will act in good faith with its insured.

65.  Accordia has breached its duty of good faith by failing to insure that premium payments were charged, collected, and applied correctly during the "conversion period."

66.  Accordia has done this consciously with ill will and dishonest purpose because Accordia knows the negative effects on insureds of failing to timely charge, collect, and apply premium payments for insurance policies. Nonetheless, Accordia has engaged in this conduct simply to deprive its insureds of benefits owed to them and to gain unfair economic advantage for itself.

67.  Accordia's breach has caused damages to the Plaintiffs and Class members.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A)  Actual and compensatory damages and interest;

(B)  Restitution, disgorgement, and other equitable monetary relief;

(C) Attorneys' fees, litigation expenses, and costs; and

(D) Any other relief this Court deems equitable and just.

## COUNT IV – NEGLIGENCE

68. Plaintiffs incorporate paragraphs 1–67 of this Complaint as if fully set forth below.

69. Defendants had, or assumed, a duty to Plaintiff and Class members to properly charge, collect, and apply premium payments for insurance and to refrain from actions that would have a negative effect on their life insurance.

70. Defendants breached this duty by failing to properly charge, collect, and apply premium payments and by, as a result, changing Plaintiffs' and Class members' life insurance in negative ways, as set forth above.

71. As a direct and proximate result of Defendants' breach, Plaintiffs and Class members have suffered damages.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A) Actual and compensatory damages and interest;

(B) Restitution, disgorgement, and other equitable monetary relief;

(C) Attorneys' fees, litigation expenses, and costs; and

(D) Any other relief this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which trial by jury is permitted.

Respectfully submitted,

/s/Vess A. Miller
Irwin B. Levin
Richard E. Shevitz
Vess A. Miller
Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
rshevitz@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

Stephen L. Williams
WILLIAMS LAW FIRM
646 Walnut Street
Terre Haute, IN 47807
Telephone: (812) 232-0107
steve@williamsinjurylaw.com
*Counsel for Plaintiffs and the Proposed Plaintiff Class*