E-FILED
Friday, 22 March, 2019 09:59:22 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY CLAPP, MARY JONES, DARYL MCCLEARY and ROBIN MCGUIRE**, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil No. 2:17-cv-2097 ) ) |
| **ACCORDIA LIFE AND ANNUITY COMPANY** and **ALLIANCE-ONE SERVICES, INC.,** | ) ) ) ) |
| Defendants. | ) ) |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Larry Clapp, Mary Jones, Daryl McCleary and Robin McGuire ("Plaintiffs"), on behalf of themselves and all others similarly situated, by counsel, bring this Class Action Complaint against Defendants Accordia Life and Annuity Company ("Accordia") and Alliance-One Services, Inc. ("Alliance-One"), and allege as follows:

## INTRODUCTION

1. This case involves insureds who had life insurance policies that were assumed by insurer Accordia and who were damaged when Accordia and/or Alliance-One stopped automatically withdrawing or accepting premium payments during a "conversion period," which caused the policies to lapse, to have their "no-lapse guarantee" removed, to be converted from one type of policy to another type of policy, or to otherwise lose crucial and highly-valuable features.

2.      These negative changes to the policies as a result of Defendants'
actions have caused significant harm to the insureds. For example, insureds who
had a universal life insurance policy that included a no-lapse guarantee were
guaranteed to have life insurance for their entire life. But, as a result of Defendants'
actions causing the removal of the no-lapse guarantee, these insureds now are not
guaranteed insurance for life and the policies are now set to lapse at a point late in
life when the insureds can no longer obtain affordable life insurance. This means
that in order to guarantee insurance for life, the insureds are now required to
obtain a new universal no-lapse policy, at a higher price than they had originally
paid because the insureds are now older than when they originally purchased the
universal life no-lapse policy currently held by Accordia. In addition, insureds have
been directly injured by Defendants' actions that have caused the cash values of
policies to be reduced and policies to be converted from cash-value policies, such as
whole life policies, to no or lower-cash value policies, such as term life insurance.

### JURISDICTION & VENUE

3.      This Court has subject matter jurisdiction over this action under 28
U.S.C. § 1332(d)(2) because this is a class action involving more than 100 class
members in which matter in controversy exceeds the sum or value of $5,000,000,
exclusive of interest and costs, and in which at least one member of the class of
plaintiffs is a citizen of a state different from a defendant.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a
substantial part of the events or omissions giving rise to the claims occurred in, was
directed to, and/or emanated from this District.

## PARTIES

5.    Plaintiff Larry Clapp is, and at all relevant times was, a citizen of the State of Illinois, residing in Coles County, Illinois.

6.    Plaintiff Mary Jones is, and at all relevant times was, a citizen of the State of Indiana, residing in Clay County, Indiana.

7.    Plaintiff Daryl McCleary is, and at all relevant times was, a citizen of the State of Indiana, residing in Vigo County, Indiana.

8.    Plaintiff Robin McGuire is, and at all relevant times was, a citizen of the State of California, residing in San Bernardino County, California.

9.    Defendant Accordia Life and Annuity Company is, and at all relevant times was, a citizen of the State of Iowa, as it is a corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Des Moines, Iowa.

10.    Defendant Alliance-One Services, Inc., is, and at all relevant times was, a citizen of the State of Delaware and of the State of Virginia, as it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Falls Church, Virginia.

## FACTUAL ALLEGATIONS

11.    In 2013, Athene Annuity and Life Company ("Athene") sold most of its life insurance business to Accordia. Athene continued to administer the business until late 2015 when Accordia assumed administration of the business.

12.     Alliance-One is a third-party insurance administrator hired by Accordia to administer its life insurance contracts. Alliance-One was responsible for collecting premium payments by Electronic Funds Transfer ("EFT"). Accordia represented to Plaintiffs and members of the Class that the change in ownership from Athene to Accordia would not impact collection of EFT payments from insureds or billing or depositing of premium payments.

13.     Defendants have engaged in a widespread and coordinated scheme to purposefully lapse or cause the cancellation or conversion of insurance policies owned by consumers. Defendants carried out this scheme or artifice by failing to automatically bill, collect, and apply payments from Plaintiffs and other insureds despite having an agreement between the parties requiring Defendants to automatically debit Plaintiffs' checking accounts for the monthly premium. This illegal practice was carried out throughout the United States as part of a coordinated effort organized by Accordia and carried out by Alliance-One. Upon information and belief, Alliance-One was the accounts receivable management company hired by Accordia to collect monthly premium payments from Plaintiffs. Accordia and Alliance-One repeatedly failed to timely and properly collect premium payments from Plaintiffs, which resulted in negative changes to their life insurance policies. Despite the negative changes, Defendants continued to promise insureds to "please be assured that coverage and any applicable guarantees remain in effect throughout this process."

4

14.     The following examples show negative changes caused by Defendants' conduct on Plaintiffs' and Class members' policies.

**Destruction of No-Lapse Guarantee: Plaintiff Mary Jones**

15.     Plaintiff Mary Jones purchased a $50,000 universal life insurance policy, Policy No. IL00155690, on June 10, 2004. The policy had a no-lapse guarantee rider, under which the policy was guaranteed never to lapse (i.e., to last for the life of the insured).

16.     The policy premiums were to be automatically deducted by EFT from Ms. Jones's checking account monthly, which they were for approximately 10 years.

17.     During the "conversion" of the policy to Accordia, Defendants ceased making automatic withdrawals of premium payments from Ms. Jones's account, beginning in approximately August of 2015.

18.     As a result of Defendants' failures to collect premium payments automatically by EFT, Defendants removed the no-lapse guarantee from Ms. Jones's policy, which means the policy is no longer guaranteed to provide coverage for life.

19.     The insured has been directly damaged, through no fault of her own, because now in order to have guaranteed insurance for life, she must qualify and pay for a new life insurance policy now, which will have a higher premium because the insured is now over 10 years older.

20.     In addition, the cash value of the insurance has been reduced by its conversion, resulting in direct financial harm to the insured, and the policy has

5

been converted into a Modified Endowment Contract, which has negative income tax consequences.

21.     Such a removal of the no lapse guarantee rider has happened to numerous insureds through no fault of their own and as a direct result of Defendants' actions during the "conversion."

**Destruction of No-Lapse Guarantee: Plaintiff Larry Clapp**

22.     Plaintiff Larry Clapp purchased a $100,000 life insurance policy for his daughter, Brittany Clapp, Policy No. IL01354590, purchased on March 26, 2009, on which he is the primary beneficiary. The policy had a no-lapse guarantee rider, under which the policy was guaranteed never to lapse (i.e., to last for the life of the insured).

23.     The policy premiums were direct billed and paid for by Mr. Clapp for approximately 6 years.

24.     During the "conversion" of the policy to Accordia, Defendants ceased billing or applying premium payments.

25.     As a result of Defendants' failures to bill or collect premium payments, Defendants removed the no-lapse guarantee from the policy, which means the policy is no longer guaranteed to provide coverage for life.

26.     Mr. Clapp has been directly damaged, through no fault of his own, because now in order to have guaranteed insurance for life for his daughter on which he is the beneficiary, he must have her qualify for and he must pay for a new life insurance policy now, which will have a higher premium because the insured is now over 7 years older.

27.     In addition, the cash value of the insurance has been reduced by its conversion, resulting in direct financial harm, and the policy has been converted into a Modified Endowment Contract, which has negative income tax consequences.

28.     Such a removal of the no lapse guarantee rider has happened to numerous insureds through no fault of their own and as a direct result of Defendants' actions during the "conversion."

**Conversion of Whole Life Insurance to Term Life Insurance: Plaintiff Daryl McCleary**

29.     Plaintiff Daryl McCleary purchased a $40,000 whole life insurance policy, Policy No. 02190320, on August 20, 1995. The policy had a guaranteed premium amount that, if paid through age 65, provided life insurance for the policyholder's entire life.

30.     The policy premiums were to be automatically deducted by EFT from Mr. McCleary's checking account monthly, which they were for approximately 20 years.

31.     During the "conversion" of the policy to Accordia, Defendants ceased making automatic withdrawals of premium payments from Mr. McCleary's account, beginning in approximately August of 2015.

32.     As a result of Defendants' failures to collect premium payments automatically by EFT or to apply premium payments made by Mr. McCleary by check, Defendants invoked a "non-forfeiture" provision of the policy, under which if an insured missed a premium payment the policy was converted to "extended term

insurance," and Defendants converted Mr. McCleary's policy from a whole life policy to "extended term insurance" due to expire on December 7, 2030.

33.     As a result of the conversion of the policy, instead of premiums being guaranteed until age 65 and coverage being provided for the insured's entire lifetime, the insured's policy will expire on December 7, 2030.

34.     The insured has been directly damaged, through no fault of his own, because now in order to have guaranteed whole life insurance, he must qualify and pay for a new whole life insurance policy now, which will have a higher premium because the insured is now over 20 years older. In addition, the cash value of the insurance has been reduced by its conversion, resulting in direct financial harm to the insured.

35.     Such a conversion from whole life insurance to extended term insurance has happened to numerous insureds through no fault of their own and as a direct result of Defendants' actions during the "conversion."

**Failure to Collect Premiums Resulting in Lapse: Plaintiff Robin McGuire**

36.     Ms. McGuire purchased a thirty (30) year, level term life insurance policy with AmerUS Life Insurance Company ("AmerUS") on November 17, 2006. The death benefit for this policy was $500,000.00. This policy was later assumed by Athene. In July 2015, Accordia assumed Ms. McGuire's policy and Alliance-One began servicing the policy. The monthly premium owed on Ms. McGuire's policy was $202.57 due on the 17th of every month. Pursuant to an EFT Agreement, Ms. McGuire's bank account was debited each month for the premium payment.

8

37.     On July 20, 2015, Ms. McGuire was notified by Accordia that it was taking ownership of her policy.  On or about September 3, 2015, Ms. McGuire contacted Accordia, because her bank account had been charged twice for her monthly premium.  On or about October 21, 2015, Ms. McGuire contacted Accordia, because her bank account had not been charged for her monthly premium.  Ms. McGuire was informed that her account was placed on an "active hold" while all insurance policies were being reviewed due to the change in ownership from Athene to Accordia.  Plaintiff was told that there would be no lapse in coverage as a result of this "active hold" and later received a letter from Accordia indicating the same thing.

38.     On December 21, 2015, Ms. McGuire contacted Accordia, because her bank account had been charged twice for her monthly premium.  On December 28, 2015, Ms. McGuire received a letter from Accordia stating that the "bank had returned the pre-authorized draft."

39.     On January 28, 2016, Ms. McGuire contacted Accordia, because her bank account had not been charged for her monthly premium.

40.     On February 24, 2016, Ms. McGuire contacted Accordia, because her bank account had not been charged for her monthly premium.

41.     On March 1, 2016, Ms. McGuire contacted Accordia, because her bank account had not been charged for her monthly premium.  Accordia assured Ms. McGuire that there would be no lapse in her coverage.

9

42.    On April 4, 2016, Ms. McGuire contacted Accordia, because her bank account had not been charged for her monthly premium.  During this phone call, Ms. McGuire was informed that her insurance policy had lapsed due to failure to pay the premiums and that a reinstatement packet had been prepared by Accordia on March 31, 2016.  On April 4, 2016, Ms. McGuire received a reinstatement packet from Accordia.  The reinstatement packet contained an insurance application.

43.    Ms. McGuire timely completed and returned the reinstatement packet to Accordia.  In order for her policy to be reinstated, the new premium to be charged to Ms. McGuire by Accordia would be $1,605.07.  Ms. McGuire could not afford to make this premium payment.

44.    Had the Defendants properly executed the EFT as they were obligated to do, Ms. McGuire's policy would not have lapsed.

45.    The lapse and potential cancellation of Ms. McGuire's insurance policy was done in violation of California law.

## CLASS ACTION ALLEGATIONS

46.    Plaintiffs bring this action on their own behalves and as a class action on behalf of the following class:

> All persons who own or owned any life insurance policies that, as of May 1, 2014, were issued by Accordia and subsequently administered by Alliance-One, or who own or owned any life insurance policies that were or are insured, managed or reinsured by Accordia, its parent, or any affiliated companies and were converted to Alliance-One's administrative systems on or around either August 1, 2015 or January 1, 2016  and subsequently administered by Alliance-One.

10

47.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(a) and (b)(3).

48.     The class consists of thousands of persons, such that joinder of all Class members is impracticable.

49.     There are questions of fact and law that are common to the Class members and that predominate over any questions affecting only individual members. These questions include, but are not limited to:

    a.     Whether Defendants business practices were unlawful, unfair, or deceptive;

    b.     Whether Defendants' engaged in a widespread and systematic practice that led to conversion of Plaintiff and Class Members' policies into lower value policies with negative features;

    c.     Whether Defendants breached their contracts with Plaintiffs and Class Members when they failed to bill, collect, or apply premium payments; and

    d.     Whether Defendants breached their duties of good faith and fair dealing to Plaintiffs and Class Members.

50.     The claims of the Plaintiffs are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiffs have no interests that are antagonistic to the interests of the Class members.

51.     The Plaintiffs are adequate representatives of the Class and have retained competent legal counsel experienced in class actions and complex litigation.

52.     A class action is an appropriate and superior method for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members and would cause a strain on judicial resources and increase the likelihood of varying outcomes, yet each Class member would be required to prove an identical set of facts in order to recover damages.

53.     This action does not present any unique management difficulties.

### COUNT I – UNFAIR AND DECEPTIVE TRADE PRACTICES / CONSUMER FRAUD

54.     Plaintiffs incorporate paragraphs 1–53 of this Complaint as if fully set forth below.

55.     Through their conduct and omissions, Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

56.     Section 2 of the ICFA, 815 ILCS 505/2, provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be

12

given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

57.    Section 10a of the ICFA, 815 ILCS 505/10A, provides in relevant part:

(a)    Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . .
                          * * *
(c)    Except as provided in subsections (f), (g), and (h) of this Section, in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

58.    Plaintiff Larry Clapp and other Class members are "consumers" or "persons," as defined under the ICFA, 815 ILCS 505/1 *et seq.*

59.    Defendants' conduct alleged in this complaint occurred in the course of trade and commerce.

60.    At all relevant times, Defendants were engaged in administering and overseeing the life insurance policies involved, in the ordinary course of business. Defendants administered the policies and payments on the policies, knowing that consumers would rely on proper billing, collection, and application of premium payments to their policies.

61.    Defendants promised that "please be assured that coverage and any applicable guarantees remain in effect throughout this process," but Defendants failed to properly bill, charge, and collect premium payments, causing coverages and guarantees to lapse.

62.     Defendants omitted the material fact that their failure to bill, charge, and collect premiums would negatively affect insureds' policies.

63.     The omission of this material fact was likely to mislead consumers and, in fact, did mislead them.

64.     Defendants made these omissions with the intent that Class members would rely on the information provided, and omitted the material fact that Defendants failed to properly bill, charge, and collect premium payments, causing coverages and guarantees to lapse.

65.     Had Defendants not engaged in the deceptive omission of the material fact described above, the members of the Class would have been presented with an informed choice.

66.     As a direct and proximate result of Defendants' conduct, Class members have suffered actual damages.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A)     Actual and punitive damages and interest;

(B)     Restitution, disgorgement, and other equitable monetary relief;

(C)     Attorneys' fees, litigation expenses, and costs; and

(D)     Any other relief this Court deems equitable and just.

## COUNT II – UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES

### (Cal. Bus. & Prof. § 17200, et seq.)

14

67.     Plaintiffs incorporate paragraphs 1–66 of this Complaint as if fully set forth below.

68.     Plaintiff Robin McGuire brings this claim individually, on behalf of other California class members and on behalf of the general public.

69.     Through the conduct and scheme described herein, Defendants engaged in unlawful, deceptive, and unfair business acts within the meaning of California Business and Professions Code § 17200, *et seq*.  Defendants' acts and practices offend an established public policy, and Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers including Plaintiff.  These actions took place through correspondence and telephone calls between Plaintiff, Accordia and/or Alliance-One from July 20, 2015 through April 2016.

70.     Acts of unfair competition and unlawful business practices of the Defendants, as well as their agents, employees, subsidiaries and contractor, include violations of California Civil Code §§1572 (actual fraud), 1573 (constructive fraud), 1709 (deceit), 1711 (deceit to defraud public or class), California Insurance Code §780 (misrepresentations of benefits or privileges promised under the terms of the policy), California Insurance Code §38.8 (requiring Insurers to maintain a system for electronically confirming a policyholder's decision to opt in to an agreement to conduct transactions electronically), California Insurance Code §1759.3 (requiring insurance administrators such as Defendant Alliance-One to maintain policyholder records in accordance with prudent standards of insurance recordkeeping) and

15

California Insurance Code §1759.6 (requiring insurance administrators such as Defendant Alliance-One who collect premiums on behalf of insurers to immediately remit funds to the insurer); and other portions of the California Insurance Code and related regulations and rules. Such acts include, but are not limited to:

    a. Accordia lapsing or cancelling a policy of insurance for non-payment when payment via EFT was available;

    b. Accordia and Alliance-One misrepresenting that premium payments would be deducted by EFT;

    c. Accordia and Alliance-One failing to abide by the terms of an EFT agreement;

    d. Alliance-One failing to abide by the terms of an insurance administration agreement of which Ms. McGuire and members of the proposed Class were intended beneficiaries;

    e. Accordia making statements that were known, or should have been known, to be a misrepresentation to a policyholder by an insurer for the purpose of inducing the lapse, forfeiture or surrender of an insurance policy;

    f. Accordia and Alliance-One omitting the truth, and specifically the true reasons for the not timely and properly collecting premium payments by EFT;

    g. Accordia engaging in unfair or deceptive acts or practices in the business of insurance;

16

h. Accordia and Alliance-One failing to adequately maintain a system for electronically confirming a policyholder's decision to opt in to an agreement to conduct transactions electronically;

i. Alliance-One failing to provide accurate information regarding policy status and collection of premium payments;

j. Accordia making, issuing, circulating, or causing to be made statements misrepresenting the terms of Ms. McGuire's policy with respect to the proper and timely collection of premium payments by EFT;

k. Accordia making or disseminating statements regarding the proper and timely collection of premium payments which were untrue, deceptive, or misleading;

l. Accordia failing to maintain policyholder records in accordance with prudent standards of insurance recordkeeping; and/or

m. Accordia and Alliance-One failing to timely collect, remit and/or apply premium funds on behalf of Ms. McGuire and members of the Class.

71.    On information and belief, Defendant Accordia failed to duly give notice of policy cancellations, failed to duly give notice of lapses in coverage, and/or failed to duly give notice of policy changes, including changes to policy administration and the manner in which premiums were collected, remitted and/or

applied, as required under the policy, California Insurance Code, and other applicable governmental statutes and codes throughout the United States..

72.     On information and belief, Defendant Accordia failed to maintain a system for electronically confirming a policyholder's decision to opt in to an agreement to conduct transactions electronically, failed to maintain policyholder records in accordance with prudent standards of insurance recordkeeping, and failed to timely remit and apply premium funds as required under the policy, California Insurance Code, and other applicable governmental statutes and codes throughout the United States..

73.     On information and belief, Defendant Alliance-One failed to properly administer the policies, collect premium payments and properly inform Ms. McGuire of the status of her policy in accordance with its responsibilities as third-party administrator for Accordia and as required under the policy, California Insurance Code, and other applicable governmental statutes and codes throughout the United States.

74.     Plaintiff McGuire reserves the right to allege other violations which constitute other unlawful business acts or practices.  Upon information and belief, Defendants' wrongful conduct in violation of § 17200, *et seq*. is ongoing and continues to this date.

75.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

76.    The Defendants treated Ms. McGuire and members of the proposed Class unfairly.

77.    Defendants' actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, are likely to deceive Plaintiff and the public, and were intended to deceive Plaintiff and members of the public.  Plaintiff and class members have in fact been deceived and have relied on Defendants' representations and omissions. This reliance has caused harm to Plaintiff and class members. Plaintiff and class members have suffered injury in fact, have been disadvantaged and have lost money as a result of Defendants' unlawful, unfair, and deceptive practices.

78.    As a result of their unfairness and deception, Defendants have been able to reap unjust revenue and profit.  Restitution is, therefore, appropriate and the Plaintiff asks that Court order restitution.  Further, upon information and belief, unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A)    Actual and punitive damages and interest;

(B)    Restitution, disgorgement, and other equitable monetary relief;

(C)    Attorneys' fees, litigation expenses, and costs; and

(D)    Any other relief this Court deems equitable and just.

## COUNT III – BREACH OF CONTRACT

79.     Plaintiffs incorporate paragraphs 1–78 of this Complaint as if fully set forth below.

80.     Plaintiffs and the Class had an agreement with Defendants, or were third party beneficiaries of agreements with Defendants, that Defendants would charge, collect, and apply premium payments towards Plaintiffs' and Class members' life insurance policies.

81.     Notwithstanding Plaintiffs' and Class members' full compliance, Defendants breached the agreement by failing to charge, collect, and apply premium payments towards Plaintiffs' and Class members' life insurance policies during the "conversion period" from Athene to Accordia.

82.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs and Class members have been damaged, including through negative changes to their insurance policies and guarantees and reduction in policy values.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A)     Actual and compensatory damages and interest;

(B)     Restitution, disgorgement, and other equitable monetary relief;

(C)     Attorneys' fees, litigation expenses, and costs; and

(D)     Any other relief this Court deems equitable and just.

20

## COUNT IV – BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

83.     Plaintiffs incorporate paragraphs 1–82 of this Complaint as if fully set forth below.

84.     Plaintiff and Class members had insurance contracts with Accordia under which Accordia was the insurer and Plaintiffs and Class members were insureds.

85.     The law recognizes an implied duty of good faith in all insurance contracts requiring that an insurer will act in good faith with its insured.

86.     Accordia has breached its duty of good faith by failing to insure that premium payments were charged, collected, and applied correctly during the "conversion period."

87.     Accordia has done this consciously with ill will and dishonest purpose because Accordia knows the negative effects on insureds of failing to timely charge, collect, and apply premium payments for insurance policies. Nonetheless, Accordia has engaged in this conduct simply to deprive its insureds of benefits owed to them and to gain unfair economic advantage for itself.

88.     Accordia's breach has caused damages to the Plaintiffs and Class members.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A)     Actual and compensatory damages and interest;

(B)     Restitution, disgorgement, and other equitable monetary relief;

21

(C)     Attorneys' fees, litigation expenses, and costs; and

(D)     Any other relief this Court deems equitable and just.

## COUNT V – NEGLIGENCE

89.     Plaintiffs incorporate paragraphs 1–88 of this Complaint as if fully set forth below.

90.     Defendants had, or assumed, a duty to Plaintiff and Class members to properly charge, collect, and apply premium payments for insurance and to refrain from actions that would have a negative effect on their life insurance.

91.     Defendants breached this duty by failing to properly charge, collect, and apply premium payments and by, as a result, changing Plaintiffs' and Class members' life insurance in negative ways, as set forth above.

92.     As a direct and proximate result of Defendants' breach, Plaintiffs and Class members have suffered damages.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and the members of the Class and against Defendants for:

(A)     Actual and compensatory damages and interest;

(B)     Restitution, disgorgement, and other equitable monetary relief;

(C)     Attorneys' fees, litigation expenses, and costs; and

(D)     Any other relief this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which trial by jury is permitted.

22

Respectfully submitted,

/s/Vess A. Miller
Irwin B. Levin
Richard E. Shevitz
Vess A. Miller
Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
rshevitz@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

Stephen L. Williams
WILLIAMS LAW FIRM
646 Walnut Street
Terre Haute, IN 47807
Telephone: (812) 232-0107
steve@williamsinjurylaw.com


James M. Terrell
P. Michael Yancey
METHVIN, TERRELL, YANCEY, STEPHENS
& MILLER, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
phone:  (205) 939-0199
facsimile:  (205) 939-0399
jterrell@mtattorneys.com
myancey@mtattorneys.com

*Counsel for Plaintiffs and the Proposed
Plaintiff Class*